FILED
U.S. DISTRICT COURT

2011 MAR 25  P 5: 07

DISTRICT OF UTAH

BY:_____
     DEPUTY CLERK

Joseph G. Pia (9945)
Nathan S. Dorius (8977)
PIA ANDERSON DORIUS REYNARD & MOSS, PLLC
Wells Fargo Building
299 South Main Street, Suite 1710
Salt Lake City, Utah 84111
Tel:  (801) 350-9000
Fax: (801) 350-9010
Email: joe.pia@padrm.com
       nathan@padrm.com

*Attorneys for Plaintiff Incentive Capital, LLC*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| INCENTIVE CAPITAL, LLC, a Utah Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> CAMELOT ENTERTAINMENT GROUP, INC., a Delaware Corporation; CAMELOT FILM GROUP, INC., a Nevada Corporation; CAMELOT DISTRIBUTION GROUP, INC., a Nevada Corporation, ROBERT P. ATWELL, an individual; JAMIE R. THOMPSON, an individual; STEVEN ISTOCK, an individual <br><br> Defendants. | **COMPLAINT** <br><br> Case: 2:11-cv-00288 <br> Assigned To : Warner, Paul M. <br> Assign. Date : 03/25/2011 <br> Description: Incentive Capital v. Camelot Entertainment Group et al |

\* \* \* \* \* \* \*

Plaintiff Incentive Capital, LLC, a Utah limited liability company, ("Plaintiff" or "Incentive") by its counsel of record Pia Anderson Dorius Reynard & Moss, hereby complains against Camelot Entertainment Group, Inc., a Delaware corporation, Camelot Film Group, Inc., a Nevada corporation, and Camelot Distribution Group, Inc., a Nevada corporation (collectively "Camelot"), Robert P. Atwell, an individual, Jamie Thompson, an individual, Steven Istock, an individual (collectively "Atwell Defendants") (Camelot and Atwell Defendants may be collectively referred to herein as the "Defendants"), and alleges in support thereof as follows:

## NATURE OF THE ACTION

1.     This is a diversity action seeking injunctive and declaratory relief and damages against Camelot and the Atwell Defendants for breach of contract, fraud, conversion (theft), misrepresentation, gross negligence, unjust enrichment, constructive trust and related claims arising out of certain loans that Camelot took from Incentive to finance the acquisition and distribution of a film and television library containing hundreds of media titles ("Liberation Library").

2.     Camelot (a public company) and the Atwell Defendants who are each officers of Camelot made gross misrepresentations about their financial stability, their ability to pay back loans, their track record marketing and distributing films, and their ability to distribute and exploit the Liberation Library to induce Incentive to provide it with funds to acquire and distribute the Library.

2

3.      Camelot and the Atwell Defendants breached the plain terms of the loan documents, and pursuant to the security agreements Incentive received in connection with loaning the funds for the purchase of the Liberation Library to Defendants, Incentive foreclosed on the Library and, as a result, is presently the legal title holder of all of the Liberation Library motion picture and television titles.

4.      Despite the legal acquisition of title to the Liberation Library by Incentive pursuant to the foreclosure sale, Camelot and the Atwell Defendants are continuing to improperly hold themselves out as the owner of the Liberation Library, and are diverting and stealing funds that that rightfully belong to Incentive.

5.      Defendants have already damaged Incentive, and unless Defendants are immediately enjoined from furthering their destructive actions, Incentive will suffer irreparable harm.

## DESCRIPTION OF THE PARTIES

6.      Plaintiff Incentive Capital, LLC is a Utah limited liability company with its principal place of business in Utah County, and is therefore a citizen of Utah.

7.      Defendant Camelot Entertainment Group, Inc. ("CEG"), is a Delaware corporation with a place of business at 8001 Irvine Center Drive, Suite 400, Irvine, California 92618. Defendant CEG is a citizen of both Delaware and California.

8.      Defendant Camelot Film Group, Inc. ("CFG"), is a Nevada corporation with a place of business at 10 Universal City Plaza, NBC/Universal Building, 20th Floor, Universal City, California 91608. Defendant CFG is a citizen of both Nevada and California.

9.      Defendant Camelot Distribution Group, Inc. ("CDG"), is a Nevada corporation with a place of business at 10 Universal City Plaza, NBC/Universal Building, 20th Floor, Universal City, California 91608. Defendant CDG is a citizen of both Nevada and California.

10.     Defendant Robert P. Atwell ("Mr. Atwell") is CEO of CEG, CFG, and CDG, and is a resident and citizen of the State of California.

11.     Defendants have conducted business in the State of Utah relative to the loans, security agreements, guarantees, and foreclosure sale of the Liberation Library and other related assets, and has participated in many business transactions in Utah relative to the dispute set forth herein.

A. JURISDICTION AND VENUE

12.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the amount of controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is among citizens of different states.

13.     This Court has personal jurisdiction over Defendants based on Utah's "long arm" statute, Utah Code Ann. §78B-3-205 inasmuch as Defendants have transacted business in the state of Utah and the claims asserted herein arise out of these transactions.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events giving rise to the claims herein occurred in the judicial district of Utah.

15.     This Court also has jurisdiction pursuant to 28 U.S.C. §§2201 and 2202 inasmuch as Plaintiff requests a declaration of its rights *vis a vis* Defendants.

16.     As set forth more fully below, on or about April 27, 2010, Incentive entered into a loan agreement with CFG (the "Note"), attached hereto as **Exhibit A**, whereby Incentive agreed to loan CFG a principal amount of $650,000.00 with fees and interest. *See* Exh. A.

17.     The Note's "Governing Law" section provides in part:  "This Note shall be construed and ***enforced under the laws of the State of Utah*** and any applicable federal laws." *See id.* (emphasis added.)

18.     The Note, and the CEG, Atwell and CDG Guarantees (collectively the "Guarantees" as more fully described below) are secured by collateral described in a security agreement between Incentive and CDG (the "CDG Security Agreement"), attached hereto as **Exhibit B**, as "Distribution Assets," a series of thirteen (13) films being distributed by CDG. *See* Exh. B.

19.     The "Governing Law; Terms" section of the CDG Security Agreement provides:

> ***This Security Agreement shall be deemed to have been made in the state of Utah and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and construed in accordance with the internal laws of the state of Utah***.  Debtor hereby consents to the jurisdiction of any Utah state or United States Federal Court sitting in Utah with respect to disputes arising out of this Security Agreement.

*See id* (emphasis added).

20.     The "Waiver of Jury Trial" section of the CDG Security Agreement provides:

> ***Any legal action or proceeding with respect to this Security Agreement must be brought before the federal or state courts located in the State of Utah***, unless Secured Party elects to bring such legal action property, generally and unconditionally, the jurisdiction of the federal or state courts located in the State of Utah as having proper venue. ***Debtor hereby irrevocably waives any objection which it may have now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Security Agreement brought in the aforesaid Utah courts and irrevocably waives and agrees not to plead or claim in any such court that any such***

*action or proceeding brought in any such court has been brought in an inconvenient forum*, and also consents to the service of process by any means authorized by the State of Utah.

*See id.* (emphasis added).

21.     The parties entered into another security and participation agreement between

Incentive and CFG (the "CFG Security Agreement"), attached hereto as **Exhibit C**, for the

"Liberation Assets," a large library of 880 motion pictures and television series episodes. *See*

Exh. C.

22.     The "Governing Law; Terms" section of the CFG Security Agreement is identical

to the CDG Security agreement:

> *This Security Agreement shall be deemed to have been made in the state of Utah and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and construed in accordance with the internal laws of the state of Utah.* Debtor hereby consents to the jurisdiction of any Utah state or United States Federal Court sitting in Utah with respect to disputes arising out of this Security Agreement.

*See id.* (emphasis added).

23.     The "Waiver of Jury Trial" section of the CFG Security Agreement provides:

> *Any legal action or proceeding with respect to this Security Agreement must be brought before the federal or state courts located in the State of Utah*, unless Secured Party elects to bring such legal action property, generally and unconditionally, the jurisdiction of the federal or state courts located in the State of Utah as having proper venue. *Debtor hereby irrevocably waives any objection which it may have now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Security Agreement brought in the aforesaid Utah courts and irrevocably waives and agrees not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum*, and also consents to the service of process by any means authorized by the State of Utah.

*See id.* (emphasis added).

24.     On or about April 27, 2010, Incentive entered into a guaranty agreement with

CEG (the "CEG Guaranty"), attached hereto as **Exhibit D**, whereby CEG unconditionally and

absolutely guaranteed CFG's repayment obligations under the Note. *See* Ex. D.

25.     The CEG Guaranty's "Governing Law" section provides:

The provisions of this Guaranty and the respective rights and duties of Guarantor and
Lender hereunder shall be governed by and *construed in accordance with Utah law and
any applicable federal laws*. . . . Guarantor hereby irrevocably agrees that *all claims in
respect of such action or proceeding may be heard and determined in such Utah* state
or federal court.  The Guarantor hereby waives any objection that it may nor or hereafter
have to the venue of any suit or any such court or that such suit is brought in any
inconvenient court.

*See id.* (emphasis added).

26.     On or about April 27, 2010, Incentive entered into a guaranty agreement with the

CEO of the Camelot Entities, Robert Atwell (the "Atwell Guaranty"), attached hereto as **Exhibit

E**, whereby Atwell unconditionally and absolutely guaranteed CFG's repayment obligations

under the Note. *See* Ex. E.

27.     The Atwell Guaranty's "Governing Law" section provides:

The provisions of this Guaranty and the respective rights and duties of Guarantor and
Lender hereunder *shall be governed by and construed in accordance with Utah law and
any applicable federal laws*.  Guarantor hereby irrevocably submits to the non-exclusive
jurisdiction of any Utah state or federal court sitting in Salt Lake County, over any action
or proceeding arising out of or relating to this Guaranty, or any document related to the
Obligations, and Guarantor hereby irrevocably agrees that *all claims in respect of such
action or proceeding may be heard and determined in such Utah state or federal court*.
The Guarantor hereby waives any objection that it may nor or hereafter have to the venue
of any suit or any such court or that such suit is brought in any inconvenient court.

*See id.* (emphasis added).

28.     On or about April 27, 2010, CDG entered into a third guaranty agreement with

Incentive (the "CDG Guaranty") as further inducement for the Note, attached hereto as **Exhibit

7

**F**, whereby CDG unconditionally and absolutely guaranteed CFG's repayment obligations under the Note. *See* Ex. F.

29.     The CDG Guaranty's "Governing Law" section provides:

> The provisions of this Guaranty and the respective rights and duties of Guarantor and Lender hereunder *shall be governed by and construed in accordance with Utah law and any applicable federal laws*. Guarantor hereby irrevocably submits to the non-exclusive jurisdiction of any Utah state or federal court sitting in Salt Lake County, over any action or proceeding arising out of or relating to this Guaranty, or any document related to the Obligations, and Guarantor hereby irrevocably agrees that *all claims in respect of such action or proceeding may be heard and determined in such Utah state or federal court*. The Guarantor hereby waives any objection that it may nor or hereafter have to the venue of any suit or any such court or that such suit is brought in any inconvenient court.

*See id.* (emphasis added).

30.     The Guarantees are further secured by collateral described in a separate escrow agreement between Incentive and CEG (the "Escrow Agreement"), attached hereto as **Exhibit G**. *See* Ex. G.

31.     The Escrow Agreement provides in part: "These Escrow Instructions and this Escrow Agreement shall be *governed by the internal laws of the State of Utah* applicable to contracts negotiated and entered into and performed wholly within the State of Utah." *See id.* (emphasis added).

32.     On or about June 11, 2010, Incentive entered into a loan modification agreement with Defendants (the "Loan Modification Agreement"), attached hereto as **Exhibit H**, whereby Defendants agreed to meet certain sales and payment benchmarks in addition to their obligations under the Note. In exchange, Incentive agreed to continue its monetary advances to CFG and to refrain from instituting legal action against Defendants. *See id.* (emphasis added).

33.     The "Recitals" section of the Loan Modification Agreement provides in part:

"Unless specifically and expressly modified herein, all remaining terms of the Loan Documents

shall remain in full force and effect." *See id.* Furthermore, the Loan Modification Agreement

does not modify any of the choice of law provisions in the Loan Documents. *See id.*

34.     Pursuant to the Loan Documents and the Loan Modification Agreement, the

applicable law as agreed to and acknowledged by Defendants is Utah law, and the proper forum

for this action is Utah.

B.  GENERAL ALLEGATIONS

35.     Plaintiff incorporates by reference each and everyone of the allegations contained

in the preceding paragraphs of the complaint as if fully set forth herein.

### *Camelot Entertainment and Robert Atwell Breached the Terms of the Note*

36.     As alleged above, on April 27, 2010, Incentive and CFG entered into a

Promissory Note ("Loan" or "Note"), whereby Incentive loaned CFG a principal amount of

$650,000.00 with fees and interest. *See* **Exhibit A**.

37.     Pursuant to the terms of the Note, the principal amount of $650,000.00, fees of

approximately $32,500.00, and applicable interest, and costs were due on or before January 31,

2011. *See* Exh. A.

38.     Additional terms of the Loan Documents require Defendants to pay:  (a) interest

of one and one-half percent (1.5%) of the outstanding balance of the Note per month

commencing May 27, 2010; and (b) ten percent (10%) of all gross revenues received by

Defendants for the exploitation of the Liberation Assets described in the CFG Security

Agreement. *See id.*

39.     Pursuant to the terms of the loan agreement, the Note is guaranteed by CEG, Robert Atwell, and CDG. *See id.*

40.     The same day that the Note was entered into, on April 27, 2010, Incentive entered into a guaranty agreement with CEG (the "CEG Guaranty") whereby CEG unconditionally and absolutely guaranteed CFG's repayment obligations under the Note. *See* **Exhibit B**,

41.     On April 27, 2010, Incentive entered into a second guaranty agreement with Mr. Atwell (the "Atwell Guaranty") whereby Mr. Atwell unconditionally and absolutely guaranteed CFG's repayment obligations under the Note. *See* **Exhibit C**.

42.     On or about April 27, 2010, Incentive entered into a third guaranty agreement with CDG (the "CDG Guaranty") whereby CDG, in order to induce Incentive to enter into the loan agreement pursuant to the Note, unconditionally and absolutely guaranteed CFG's repayment obligations under the Note. *See* **Exhibit D**.

43.     The CEG, Atwell and CDG Guarantees (collectively the "Guarantees") are secured by collateral described in a separate security agreement between Incentive and CDG (the "CDG Security Agreement") including the "Distribution Assets," a list of thirteen (13) films in which CDG has certain distribution and license rights. *See* **Exhibit E**.

44.     The Guarantees are secured by additional collateral described in a separate security and participation agreement between Incentive and CFG (the "CFG Security Agreement") including the "Liberations Assets," which encompasses a large library of motion pictures and television series. *See* **Exhibit F**.

45.     The Guarantees are further secured by collateral described in a separate escrow agreement between Incentive and CEG (the "Escrow Agreement") referred to as "Pledged Shares." *See* **Exhibit G**.

46.     On or about June 11, 2010, Incentive entered into a loan modification agreement with Defendants (the "Loan Modification Agreement"), whereby Defendants agreed to meet certain sales and payment benchmarks in addition to their obligations under the Note. *See* Exh. I. In exchange, Incentive agreed to continue its monetary advances to CFG and to refrain from instituting legal action against Defendants. *See* **Exhibit H**.

47.     Despite Incentive's good-faith attempt to work through Defendants initial breach of the Loan Documents by entering into the Loan Modification Agreement, Defendants failed to meet their obligations under the Loan Modification Agreement and the unmodified terms of the Note.

48.     To date none of the liable parties under the Loan Documents and the Loan Modification Agreement, namely Defendant CFG as borrower and Defendants CEG, Mr. Atwell, and CDG as guarantors, has met their obligations to Incentive.

### *Incentive Properly Foreclosed on the Collateral Set Forth in the Security Agreements*

49.     Pursuant to the terms of the Note, the principal amount of $650,000.00, fees of approximately $32,500.00, and applicable interest were due on or before January 31, 2011.

50.     Additional terms of the Loan Documents require Plaintiffs to pay: (a) interest of one and one-half percent (1.5%) of the outstanding balance of the Note per month commencing May 27, 2010; and (b) ten percent (10%) of all gross revenues received by Plaintiffs for the exploitation of the Liberation Assets described in the CFG Security Agreement.

51.     Plaintiffs failed to meet their obligations under the Loan Documents just months after receiving funds from Incentive.

52.     On or about June 11, 2010, in an attempt to resolve the disputes surrounding Plaintiffs' breach of the Loan Documents, Incentive entered into the Loan Modification Agreement, whereby Plaintiffs agreed to meet certain sales and payment benchmarks in addition to their obligations under the Note.  In exchange, Incentive agreed to continue its monetary advances to CFG and to refrain from instituting legal action against Plaintiffs.

53.     Despite Incentive's good-faith attempt to work through Plaintiffs' initial breach of the Loan Documents by entering into the Loan Modification Agreement, Plaintiffs failed to meet their obligations under the Loan Modification Agreement.

54.     To date none of the liable parties under the Loan Documents and the Loan Modification Agreement, namely Plaintiff CFG as borrower and Plaintiffs CEG, Mr. Atwell, and CDG as guarantors, has met their obligations in full to Incentive.

55.     Incentive has notified Plaintiffs of their breach of the Loan Documents and the Loan Modification Agreement on numerous occasions.

56.     After many unsuccessful attempts to settle the matter, Incentive began steps to foreclose on its collateral set forth in the security agreements and guarantee agreements.

57.     On February 9, 2011, Incentive issued a proper Notice of Disposition of Collateral by Public Sale that set as the sale date February 21, 2011.

58.     On February 21, 2011 at 9:00 a.m., Incentive held a properly noticed creditor's sale ("Foreclosure Sale") in the state of Utah to foreclose on the collateral set forth in the Security Agreements.

59.     Also on February 21, 2011, Incentive issued a Transfer Statement to Debtors stating, among other things:

> The debtors, Camelot Distribution Group, Inc., Camelot Entertainment Group, Inc., and Camelot Film Group, Inc. (collectively, "Debtor"), defaulted under their loan obligations

to the secured party, Incentive Capital, LLC (the "Secured Party"). As a result thereof, the Secured Party, pursuant to its Notice of Disposition of Collateral by Public Sale dated February 9, 2011, did conduct a public sale of the following personal property constituting a portion of Secured Party's collateral (the "Collateral"):

> All of Debtor's rights to the film library described herein below and referred to as the "Distribution Assets", along with all products and proceeds of or from (a) the Distribution Assets; and (b) all accounts, negotiable instruments, chattel paper and electronic chattel paper, general intangibles, proceeds, and monies derived from the disposition or other exploitation of the Distribution Assets in all media, from all sources, worldwide during the term hereof. The Distribution Assets include without limitation the following films, and all of Debtor's right, title and interest therein, including distribution rights, royalty interests, and contract/account payments: Samurai Avenger; First Strike; Screwball: The Ted Whitfield Story (aka The Wiffler); The Fallen; One Lucky Dog (aka Weiner Dog Nationals); Never Sleep Again; Hellraiser Unleashed; Fink!; Nude Nuns With Big Guns; Zombie Culture; National Lampoons Dirty Movie; Who Is KK Downey; and Next of Kin.

> All of Debtor's personal property assets and interests as more particularly described in the Asset Purchase Agreement (the "Asset Purchase Agreement") dated April 28, 2010 between Camelot Film Group, Inc., a Nevada corporation, on the one hand, and CMBG Advisors, Inc., a California corporation in its sole and limited capacity as assignee for the benefit of creditors of Liberation Group, Inc., on the other hand, and all products and proceeds thereof, including without limitation (a) that certain film library referred to as the Liberation Assets (as defined in the Asset Purchase Agreement); (b) all accounts, negotiable instruments, chattel paper and electronic chattel paper, general intangibles, proceeds, and monies derived from the disposition or other exploitation of the Liberation Assets in all media, from all sources, worldwide during the term hereof; and (c) other assets of the Debtor as set forth in the Asset Purchase Agreement.

(Included with Exhibit L).

60.     No objection was made to the Foreclosure Sale, and as of that date Incentive became the legal title holder to the Liberation Library.

61.     The Foreclosure Sale transferred ownership of all of the collateral set forth in the Security Agreements (with the exception of any collateral provided for under the Guarantees).

62.     Defendants refuse to acknowledge the ownership interests of Incentive and are improperly maintaining control over the funds, physical property, and intellectual property, including contracts and payment rights in contravention of Incentive's ownership rights.

63.     Defendants are diverting and converting revenue that is being generated from the Liberation Library that rightfully belongs to Incentive.

64.     Defendants are refusing to provide information regarding the location of physical elements of the Liberation Library, such as where master video and audio recordings are stored, the many licensing contracts, where revenue and funds are being deposited that are derived from the Liberation Library.

65.     These actions violate the property rights of Incentive, are a breach of the parties agreements, and amount to, among other things, conversion, theft, and trespass.

### *Camelot Entertainment and Robert Atwell Made Misrepresentations to Induce the Loan*

66.     The Defendants misrepresented their financial stability, ability to undertake and pay back loans, abilities as a distributor, and assets and holdings in order to induce Incentive to enter into the Loan Documents set forth above.

67.     Based on these misrepresentations, as well as security agreements, and a personal guarantee from Robert Atwell (the CEO of Camelot), Incentive Capital lent Camelot the funds to acquire and distribute the Liberation Library.

68.     It was only a matter of months before Camelot was seriously underperforming on its agreed-to benchmarks for distributing the Liberation Library, resulting in immediate breach of its contracts with Incentive.

69.     Several months later Camelot disclosed that it had financial problems and was unable to perform in accordance with its loan agreements.  After many futile attempts to work out the issues, Camelot defaulted on its loans.

70.     But for the misrepresentations of the Defendants, Incentive would not have entered into the Loan Documents.

## FIRST CAUSE OF ACTION
### (Breach of Agreement)

71.     Incentive hereby incorporates by reference the allegations set forth above as if fully set forth herein.

72.     The Loan Documents, whereby CFG agreed to repay the loan pursuant to the Note, and whereby CEG, Mr. Atwell and CDG guaranteed CFG's repayment pursuant to the Guarantees, the Security Agreements, and the Escrow Agreement, constitute valid and enforceable express or implied contracts in that Incentive agreed to loan $650,000.00 in principal to CFG in exchange for CFG's promise to make repayment in full for the loan plus interests, fees and costs, and for CEG's, Mr. Atwell's and CDG's unconditional and absolute guarantee of CFG's repayment in full for the loan to Incentive.

73.     Incentive rendered performance of its obligations under the Loan Documents, by loaning $650,000.00 in principal to CFG, which was authorized, requested, approved and accepted by Defendants.

74.     Defendants, on the other hand, materially breached the Loan Documents, by, among other things, failing to repay Incentive the $650,000.00 in principal plus interest, fees and costs to Incentive as required under the Loan Documents, and in particular the Note.

75.     Defendants have breached their performance obligations as set forth in the Loan Documents, such as to generate income in accordance with their projections.

76.     Defendants have failed to make interest payments, and revenue payments as required under the terms of the Note, and have improperly diverted and converted funds belonging to Incentive to themselves in violation of the parties agreements.

77.     As a direct and proximate result of Defendants' breach of the Loan Documents, as described above, Incentive has incurred, and continues to incur, damages in an amount to be determined at trial, but no less than $650,000.00 plus all costs, expenses and attorneys' fees incurred by Incentive.

78.     Incentive is, therefore, entitled to judgment as set forth below in the Prayer for Relief.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel)

79.     Incentive hereby incorporates by reference all the allegations set forth above as if fully set forth herein.

80.     Incentive relied to its detriment on Defendants' obligations, representations and commitments to comply with the payment obligations of the Note.

81.     Had Incentive known that Defendants would not repay it, Incentive would not have granted the loan to CFG.

82.     Under these circumstances, it would be fundamentally unfair to permit Defendants to deny the existence of a contract, and they should be estopped from doing so.

83.     Incentive has fully performed all of its obligations under the Loan Documents.

84.     Incentive has demanded repayment from Defendants of any remaining balance owed by Defendants for the loan granted to CFG under the Loan Documents, but Defendants have failed to make payment.

85.     Under the Loan Documents, Defendants are presently obligated to pay Incentive the principal rees totaling $650,000.00, plus all costs, expenses and attorneys' fees incurred by Incentive in an amount to be determined at trial.

86.     Incentive is therefore entitled to judgment against Defendants as set forth below in the Prayer for Relief.

### THIRD CAUSE OF ACTION
### (Quasi Contract, Unjust Enrichment and/or Quantum Meruit Claim)

87.     Incentive hereby incorporates by reference the allegations set forth above as if fully set forth herein.

88.     If for any reason the trier-of-fact in this case fails to identify the existence of an enforceable and binding contract between Incentive and Defendants, including the Loan Documents, Incentive asserts an alternative claim for Quasi Contract, Unjust Enrichment and/or Quantum Meruit against Defendants.

89.     Incentive granted a loan in the amount of $650,000.00 in principal to CFG for Defendants' benefit, and Incentive thereby conferred a benefit upon Defendants with a reasonable expectation of being compensated in an amount equal to the value of the loan granted to CFG.

90.     Among other things, Incentive, in justifiable and reasonable reliance on Defendants' promise to pay, granted a loan in the amount of $650,000.00 in principal to CFG.

91.     To permit Defendants to retain the benefits received for the loan granted to CFG on their behalf without fully compensating Incentive would result in an unconscionable and unjust enrichment of Defendants at Incentive's expense.

92.     Defendants were fully aware of the benefits conferred upon them by Incentive.

93.     Incentive did not act as a volunteer or intermeddler in granting a loan to CFG because the loan was expressly requested, authorized and accepted by Defendants.

94.     Defendants have been unjustly enriched, and Incentive is entitled to recover under a theory of quasi contract/quantum meruit, in an amount to be determined at trial but in no event less than $650,000.00, plus al costs, expenses and attorneys' fees incurred by Incentive.

95.     Incentive is therefore entitled to judgment against Defendants as set forth below in the Prayer for Relief.

## FOURTH CAUSE OF ACTION
### (Declaratory Relief)

96.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein by this reference.

97.      Plaintiff and Defendants entered into the Note, the Security Agreements, and the Guarantees wherein each party agreed to perform certain obligations set forth above and in the attached agreements, incorporated herein by this reference.

98.     According to the Loan Documents, upon breach by the Defendants, Incentive is entitled as a creditor to foreclose on the collateral set forth in the Security Agreements and Guarantees, including without limitation the Liberation Library and the Distribution Assets ("Collateral").

99.     Incentive conducted a proper foreclosure sale on the Collateral after providing appropriate notice and publication of the sale.

100.     As of the time of the sale on February 21, 2011, Incentive became the legal title owner of the Collateral, including the Liberation Library and the Distribution Assets.

101.    The Defendants dispute the ownership rights of Incentive.

102.    Defendants refuse to acknowledge the ownership interests of Incentive and are improperly maintaining control over funds, physical property, and intellectual property associated with the Collateral including contracts and payment rights in contravention of Incentive's ownership rights.

103.    Defendants are diverting and converting revenue that is being generated from the Liberation Library that rightfully belongs to Incentive.

104.    Defendants are refusing to provide information regarding the location of physical elements of the Liberation Library, such as where master video and audio recordings are stored, the many licensing contracts, where revenue and funds are being deposited that are derived from the Liberation Library.

105.    These actions violate the property rights of Incentive.

106.    An actual, justiciable controversy exists between the Plaintiff and Defendants as to the parties' rights and privileges.

107.    Plaintiff's interest in the rights and privileges under the agreements are adverse to Defendants interests in the rights and privileges under the agreements.

108.    Both the Plaintiff and Defendants have legally protectable rights and interests in the controversy relating to the parties' rights and privileges under the agreements.

109.    The causes of action raised by the Plaintiff in this Complaint cause the issue of the parties' rights and privileges under the Loan Documents to be ripe for judicial determination.

110.    Based on the allegations set forth herein, Plaintiff requests the Court to declare that:

a.      Incentive is the legal owner of all right, title, and interest in and to the Collateral.

b.      Defendants must provide all funds, contracts, contract rights, property (whether physical or intangible), accounts, all products and proceeds of or from the Distribution Assets and the Liberation Library as arising under the Asset Purchase Agreement referenced in the attached exhibits and incorporated herein by this reference; all accounts, negotiable instruments, chattel paper and electronic chattel paper, general intangibles, proceeds, and monies derived from the disposition or other exploitation of the Collateral in all media, from all sources, worldwide.

c.      Defendants retain no rights relative to the Collateral.

d.      Defendants must affirmatively place on notice (in writing) to all of those interested in the Collateral that Incentive is the owner thereof.

e.      Incentive has acted properly and without any impropriety as a lender and in the process of acquiring the Collateral.

111.    Incentive is therefore entitled to judgment against Defendants as set forth below in the Prayer for Relief.

## FIFTH CAUSE OF ACTION
C. (Breach of Covenant of Good Faith and Fair Dealing against Defendant Abrams)

112.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein by this reference.

113.    The Loan Documents constitute binding agreements between Plaintiff and Defendants to the extent the provisions can be properly interpreted.

114.    An implied covenant of good faith and fair dealing inheres in the Loan Documents that requires Defendants to not act in any manner that denies 3 Mark the benefit of the agreement to enter the Note and to repay the Note.

115.    Defendants breached the implied covenant of good faith and fair dealing by, among other things, misrepresenting the financial stability, marketing and distribution capabilities of Defendants, the assets owned or controlled by Defendants, and the ability to repay the Note.

116.    Defendants' breach of the covenant of good faith and fair dealing has directly and proximately caused damages to Plaintiff in an amount to be determined at trial, together with the value of interest, costs, and attorneys' fees.

117.    Incentive is therefore entitled to judgment against Defendants as set forth below in the Prayer for Relief.

D.  SIXTH CAUSE OF ACTION

E.  (Civil Conspiracy against All Defendants)

F.

118.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein by this reference.

119.    Defendants, and each of them conspired through agreements to deprive Plaintiff of monies and other property by among other things, making the misrepresentations set forth herein, failing to repay the amounts due under the Loan Documents, diverting and converting funds and property that rightfully belong to Plaintiff, and falsifying information and other documents relied upon by Plaintiff.

120.    Defendants have no legal or lawful claim to the Collateral or funds derived therefrom.

121.    As owner of the Collateral, Plaintiff should be entitled to freely exploit the Distribution Assets and the Liberation Library to generate revenue and to enlist the assistance of other individuals and parties to commercialize the Collateral.

122.    Defendants have and continue to undertake an unlawful conspiracy to deprive Plaintiff of monies and property rightfully belonging to Plaintiff.

123.    Defendants have and continue to improperly misappropriate assets of Plaintiff and, including revenue rightfully belonging to Plaintiff.

124.    The Defendants' conspiracy has directly and proximately caused damages to Plaintiff in an amount to be determined at trial, together with the value of interest, costs, and attorneys' fees.

125.    Incentive is therefore entitled to judgment against Defendants as set forth below in the Prayer for Relief.

G. SEVENTH CAUSE OF ACTION

**(Conversion Against All Defendants)**

H.

126.    Plaintiff is the owner of the Collateral including all revenue generated therefrom ("Incentive's Property").

127.    Defendants have intentionally interfered with Incentive's Property by receiving revenue and funds that should be directed to Incentive.

128.    Defendants have intentionally interfered with Incentive's Property by making improper claims that Defendants are still the rightful owners of the property.

129.    Defendants' interference with and theft of Incentive's Property has deprived Plaintiff of the ability to fully commercialize the Collateral.

130.    The Defendants' conversion has directly and proximately caused damages to Plaintiff in an amount to be determined at trial, together with the value of interest, costs, and attorneys' fees.

131.    Incentive is therefore entitled to judgment against Defendants as set forth below in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    For a judgment against Defendants for each of the causes of action set forth above, including punitive damages where applicable, attorneys' fees, costs, and other relief as the Court may deem just, but in no event less than $75,000;

B.    For attorney fees and costs of court incurred herein.  The amount to be proven by affidavit; and

C.    For all other relief that the Court deems just, equitable, and proper, including declaratory relief as set forth above.

DATED this 25th of March, 2011.

PIA ANDERSON DORIUS REYNARD & MOSS

Joseph G. Pia
Nathan Dorius
*Attorneys for Plaintiff*

Plaintiff's Address:

Incentive Capital, LLC
222 South Main Street, Suite 1800
Salt Lake City, Utah 84101